### AMERICAN DREDGING CO. v. UNITED STATES et al.

No. 61.

District Court, E. D. Pennsylvania.

Jan. 14, 1948.

Clark, Brown, McCown, Fortenbaugh & Young, of Philadelphia, Pa., for libellant.

Russell L. Hiller, Asst. U.S.Atty., of Philadelphia, Pa., for respondents U. S. of America, War Shipping Administration, and Parry Navigation Co., Inc.

Horace T. Atkins (of Atkins and Weymar), of New York City, and Rawle & Henderson, of Philadelphia, Pa., for respondent Union Stevedoring Corporation.

BARD, District Judge.

This maritime collision case is before the Court on the question of liability only. On the basis of the pleadings and the testimony, I make the following special

### Findings of Fact.

1. The libellant is the American Dredging Company.

2. The respondents are the United States of America, War Shipping Administration, Parry Navigation Company, Inc., and Union Stevedoring Corporation.

3. The merchant vessel "Royal S. Copeland" was at all material times owned by the United States of America, War Shipping Administration. She was operated by the Parry Navigation Company, Inc., under a general agency agreement.

4. In the early morning of January 22, 1946, the "Royal S. Copeland" was made fast, bow in, at about the center of the south side of the Greenwich Coal Pier, which extends in an easterly direction from the west bank of the Delaware River at the Port of Philadelphia, Pennsylvania.

5. Shortly after the "Copeland" docked, she was boarded by employees of the Union Stevedoring Corporation, who came aboard the vessel to prepare her holds for loading coal. These preparations were accom-

plished by the use of the ship's booms and tackle in removing the crossarms and hatch covers. The vessel's holds were prepared for loading by 10:30 a.m. on January 22, 1946.

6. The bottom of the Delaware River for a space of 150 feet south of the Greenwich coal pier is dredged periodically to a depth of approximately 30 feet at mean low tide. To the south of the dredged area the bottom slopes gradually upward until it becomes a mud flat, which projects above the surface of the water at low tide.

7. The "Copeland" is a vessel of the Liberty Ship type. She is 422.8 feet long and has a beam of 56.9 feet.

8. After preparing the holds of the "Copeland" for receiving coal, the employees of the Union Stevedoring Corporation swung the port booms of the "Copeland" outboard. The booms were left at an angle of approximately 45 degrees. This is the usual and customary manner of arranging the vessel's booms at the Greenwich Coal Pier. The booms are arranged in this fashion so that they will not interfere with the operation of the stationary coaling machine.

9. At about 7:30 p.m. on January 22, 1946, the libellant's steam tug "L. Y. Schermerhorn", with the light scow "120" in tow on her port side, approached the outer end of the Greenwich Coal Prier. The "Schermerhorn" and her tow were bound for the dredge "Republic", which was operating in the Greenwich Coal Pier slip about 300 feet toward the shore from the port bow of the "Copeland", and approximately 125 feet south of the pier.

10. The "Schermerhorn" has a beam of 23½ feet and her stack extends to a height of approximately 45 feet above the water line.

11. The scow "120" has a 40 foot beam, and draws four feet of water when light.

12. At 7:30 p.m. on January 22, 1946, the night was dark but clear; there was a mild northwesterly breeze of approximately six miles per hour, and the tide was ebbing with a current of about one-half knot. The water at this point was 3.6 feet above mean low tide.

13. The "Schermerhorn" with the light scow "120" in tow, passed the outer end of the pier and proceeded along the south side of the pier for a distance of approximately 250 feet, at which time, in order to navigate around the stern of the "Copeland", the tug made a port turn, then a turn to starboard, and proceeded on a course parallel with the "Copeland" with the tug's starboard side almost touching the hull of the moored vessel. While the "Schermerhorn" was proceeding alongside the "Copeland", the master of the tug played his searchlight along the waistline of the "Copeland" as well as above her deck level at a distance of approximately 10 feet ahead of the bow of the tug. The "Copeland" was illuminated by clusters of flood lights suspended from each of her masts, which illuminated the deck and superstructure of the vessel.

14. When the "Schermerhorn" reached a position approximately abreast the number four hold of the "Copeland", the "Schermerhorn's" stack became fouled with a guy which extended from the end of the port after boom of the "Copeland" to the vessel's rail. The "Schermerhorn's" stack was raked aft, and she received certain other damage. There was no apparent damage to the "Copeland".

15. At the time of the accident, the "Copeland" was loading coal in the number two hatch. Loading of coal in number four hatch commenced at 9:30 p.m. on the night of January 22, 1946.

16. In passing the "Copeland", the "Schermerhorn" could have kept at a distance of at least 30 feet south of the vessel at all times without incurring any risk of stranding either the tug or her tow. Had she kept as much as 15 feet away, the accident would not have occurred.

17. The proximate cause of the accident was the navigation of the "Schermerhorn" in unreasonably close proximity to the moored vessel.

### Conclusions of Law.

1. The respondents are not liable to the libellant.

2. The libel must be dismissed.